**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                        NORTHERN DISTRICT OF CALIFORNIA
7
8    ROSEMARY JENSEN AND RANDY                No. C-08-3440 JCS
     JENSEN.,
9                                             **ORDER GRANTING DEFENDANT'S**
                    Plaintiffs,               **MOTION FOR SUMMARY JUDGMENT**
10         v.                                 **[Docket No. 56]**
11   COUNTY OF SONOMA,
12                  Defendant.
     _____/
13
14   **I.     INTRODUCTION**
15         Plaintiffs Rosemary and Randy Jensen ("Plaintiffs") brought this action against the County
16   of Sonoma ("Defendant") after an administrative hearing that resulted in civil penalties and
17   restrictions of the use of Plaintiff Rosemary Jensen's property.  Plaintiffs sued on July 16, 2008,
18   alleging violations of 42 U.S.C. §1983, a violation of the California Constitution, Article I, Section
19   1, and a claim under California Code of Civil Procedure §1094.5.  Plaintiffs seek damages and
20   injunctive relief.  Defendant has filed a motion for summary judgment.
21         Defendant raises four principal arguments, most of which were also raised in the Defendant's
22   motion to dismiss.  The Court denied the motion to dismiss, concluding that the arguments were
23   more appropriate on a motion for summary judgment.  As a threshold matter, Defendant argues that
24   Plaintiff Randy Jensen is not a proper plaintiff because he is not an owner of the property at issue in
25   this case.  Second, Defendant claims that because Plaintiffs have not sought review of the
26   administrative decision in the state courts under California Rule of Civil Procedure §1094.5, they are
27   precluded by the doctrine of claim preclusion from bringing their claims in a federal action here.
28   Third, Defendant argues that the undisputed facts and the administrative record below establish that

1   no constitutional violations can proceed as a matter of law.  Fourth, Defendant argues that Plaintiffs'

2   third cause of action under California Code of Civil Procedure §1094.5 cannot proceed because

3   there is no federal jurisdiction over California state writ proceedings.

4         Plaintiffs oppose the motion, arguing again that the doctrine of claim preclusion is not

5   applicable in this case, and even if the Court conducts a claim preclusion analysis, the administrative

6   proceeding below failed to provide adequate due process.  Plaintiffs also argue that they have

7   presented their CCP §1094.5 claim as count three of the complaint in this case, and that this satisfies

8   any administrative appeal requirement.  With respect to the third claim, Plaintiffs contend that this

9   Court has jurisdiction over the third claim based on supplemental jurisdiction.

10        For the reasons set forth below, the Court GRANTS Defendant's motion for summary

11   judgment as to all claims contained in Count 1 of the Amended Complaint and DISMISSES

12   WITHOUT PREJUDICE Counts 2 and 3 of the Amended Complaint.

13   **II.**       **BACKGROUND**

14        **A.**       **Factual Background and Procedural History[1]**

15        Plaintiffs Rosemary and Randy Jensen[2] possess approximately 20 acres of land located at 50

16   Sonoma Mountain Road in Sonoma County.  JSUF 1; Defendant's Request for Judicial Notice

17   ("RJN"), Ex. A at 97.  The land is zoned "DA" or "Diverse Agricultural."  JSUF 2.  On November

18   29, 2006, Sonoma County's Permit and Resource Management Department ("PRMD") received an

19   anonymous complaint that there was an unauthorized wrecking and salvage yard located on the

20   Jensen property.  Declaration of Ben Neuman in Support of Motion for Summary Judgment

21   ("Neuman Decl."), ¶ 4, 5.  The PRMD officials drove to the property for a visual inspection on

22   December 7, 2006.  *Id.* ¶ 6.  From the driveway, the inspector observed several tow trucks,

23   automobile hills, and forklifts on the property.  *Id.*

24

25

26        [1]The facts are taking from the Amended Joint Statement of Undisputed Facts ("JSUF") unless otherwise noted.

27        [2]As of November 2006 and through the hearing of March 16, 2008, Rosemary Jensen was the

28   record owner of the property.  JSUF 1.  Randy Jensen is Rosemary Jensen's son.  He is not an owner of record.  JSUF 4.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    On March 8, 2007, PRMD Personnel inspected the Jensen property; Randy Jensen and his

2    attorney were present for the inspection.  JSUF 5; Neuman Decl., ¶ 7.  On March 14, 2007,

3    Defendant mailed Plaintiffs a "Notice of Violation" alleging that Plaintiffs' use of their land violated

4    a Sonoma County Zoning Ordinance.  Defendant's Request for Judicial Notice ("RJN")  Ex. B.

5    Specifically, Defendant alleged that Plaintiffs were using their property as a non-operative motor

6    vehicle storage yard, "non-operative motor vehicle storage, truck or equipment terminal or depot,

7    and junkyard" in violation of Sonoma County Code, Sections 26-08-010, 26-08-020, 26-08-030 and

8    26-92-200.  JSUF 3.  The letter notified the Jensens of the right to appeal the determination of the

9    violation and provided the appellate deadline.  JSUF 6.  No appeal was filed from the  determination

10    of violation pursuant to the March 14, 2007 notice.

11    On May 9, 2007, Plaintiffs received a second "Notice of Violation," which indicated that

12    Defendant had inspected the property and confirmed that the alleged unlawful use of the property

13    was ongoing.  JSUF 8; RJN, Ex. B.  The notice stated:

14    > This letter is to advise you that this Department will be proceeding with an administrative
     > abatement hearing pursuant to Sonoma County Code Section 1-7.3 to obtain an order

15    > requiring that the unlawful use cease.  In addition, the Department will seek civil penalties
     > and the costs of abatement under Sections 1-7 and 1-7.1, Sonoma County Code.

16

17    *Id.*

18    The abatement hearing procedure is set forth in the Sonoma County Code section 1-7.3, *et.*

19    *seq.*  JSUF 9.  The County of Sonoma adopted specific quasi-judicial procedures to govern

20    abatement hearings in 1987 and authorized, through the ordinance, the appointment of hearing

21    officers to hear zoning abatement appeals in accordance with Cal. Gov't. Code Section 27724.

22    JSUF 10; Declaration of Debbie Latham ("Latham Decl."), Ex. A.  Plaintiffs were given the

23    opportunity to object to any hearing officers, but declined to do so.  JSUF 11; RJN, Ex. B [Ex. G to

24    Abatement Report].  The hearing procedures provide hearing officers with the powers set forth in

25    Government Code Sections 27721 and 27722, including the power to: 1)  issue subpoenas, 2)

26    receive evidence, 3) administer oaths, 4) rule on questions of law and the admissibility of evidence,

27    5) continue the hearing from time to time, and 6) decide a matter upon which a hearing has been

28    held.  JSUF 17; Latham Decl., Ex. A.  Sonoma County Hearing Officers are not appointed by the

United States District Court

For the Northern District of California

County or PRMD.  JSUF 26.  People who wish to serve as hearing officers apply for the position.

*Id.*  Those applicants who meet the qualifications are then selected by a panel of non-County

professionals and those deemed qualified through this process become potential hearing officers.  *Id.*

The hearings are assigned in rotational order to all qualified hearing officers to ensure equality of

distribution of cases.  *Id.*  The hearing officers are paid the same rates regardless of the number of

cases they are assigned and regardless of outcome.  *Id.*

On May 9, 2007, the Notice of Hearing was mailed to the property owner, Rosemary Jensen,

and was also posted at three different locations on the property.  JSUF 12; RJN, Ex. B [Ex. L to

Abatement Hearing Report].  On December 21, 2007, a "Notice of Selection of Hearing Officers"

was sent to the Plaintiffs.  JSUF 14.  On January 11, 2008, counsel for the Plaintiffs sent a response

to the Notice of Hearing, and copied both Randy and Rosemary Jensen, in which counsel sought a

deferment of the hearing date.  JSUF 13; RJN, Ex. B [Ex. H to Abatement Hearing Report].  The

abatement hearing was postponed until March 7, 2008.  JSUF 15; RJN, Ex. A.

On March 7, 2008, a hearing was held at which Plaintiffs were permitted to "argue

vehemently that the abatement proceedings were in violation of their fundamental rights under the

state and federal constitutions."  JSUF 19; Verified First Amended Complaint (hereafter "Am.

Compl.") ¶ 8.  They also argued that their use was permissible under the ordinance.  RJN, Ex A.

The transcripts of the hearing demonstrate that Plaintiffs' counsel was permitted to cross-examine

witnesses at the hearing.  RJN, Ex. A.  From the hearing transcript, it does not appear that there was

any documentary evidence that plaintiffs sought to admit that was excluded or not permitted to be

introduced by the hearing officer.  RJN, Ex. A.  It is undisputed that Plaintiffs did not seek to

subpoena any witnesses or documents for the hearing, despite having the ability to do so.  JSUF 18;

RJN, Ex. A.  It is also undisputed that the hearing officer had the discretion to exclude unduly

repetitious or irrelevant evidence.  JSUF 22; Latham Decl., Ex. A.  Plaintiffs allege that Defendant

conducted the hearing in a manner that prevented "the orderly questioning/cross-examination of

witnesses, and presentation of evidence and documents."  Declaration of Stephen Schmid ("Schmid

Decl."), ¶ 7.  It is clear from the transcript, however, that Plaintiffs' counsel was permitted to

conduct cross-examination of witnesses.  RJN, Ex. A at 24.  Plaintiffs contend that the hearing

4

officer shortened the hearing to twenty additional minutes after the lunch break, when Plaintiffs had understood that the hearing would last all day.  Schmid Decl., ¶¶  4-6.

Plaintiffs allege in their Amended Complaint that: (1) the County was contemptuous of them and their counsel; (2) the hearing officer was disruptive of their attempt to present their case; (3) they were not afforded a reasonable opportunity to be heard and present their case; (4)  they were intimidated; (5) the burden of proof was impermissibly placed on them to disprove the allegations against them; (6) Defendant interfered with and denied Plaintiffs' right to cross-examine witnesses; (7) the hearing officer was biased against them and "prejudged the facts prior to commencement of the hearing"; and finally (8)  the hearing officer had an incentive to find against Plaintiffs because the hearing officer had a financial stake in the outcome under the County's policies.  Amended Compl. ¶¶  9, 10.  In addition to violating their procedural and substantive due process rights, Plaintiffs argue that they were deprived of their First Amendment right to petition and redress their grievances due to the manner in which the hearing was conducted.  *Id.* ¶ 11.

Following the hearing, the hearing officer issued the "County of Sonoma Decision and Administrative Order" finding Plaintiffs in violation of the ordinance, and ordering abatement by Plaintiffs.  JSUF 23; RJN, Ex. C.  The officer also imposed $8,257.00 in civil penalties with further penalties to accrue if the use was not abated within 45 days, imposition of $2,973.75 in costs, and further ordered that a lien be placed on Plaintiffs' property.  *Id.*

The Sonoma County Decision and Administrative Order provided that the decision was final, and subject to judicial review "in accordance with California Code of Civil Procedure Sections 1094.5 and 1094.6."  JSUF 24, RJN, Ex. C.  The decision also provided that judicial review must be sought no later than the 90th day following the date on which the Decision became final.  *Id.* Plaintiffs do not dispute that the decision was served on them and their attorney.  There is also no evidence that Plaintiffs sought judicial review in the California courts pursuant to CCP §1094.5 and §1094.6.  Plaintiffs did file a federal lawsuit on July 16, 2008, which included a claim under CCP § 1094.5.  JSUF 7.

**United States District Court**

For the Northern District of California

1    **III.    ANALYSIS**

2        **A.    Legal Standard Under Rule 56(c)**

3        Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be

4    rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

5    together with affidavits, if any, show that there are no genuine issues as to any material fact and that

6    the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A "genuine" issue

7    of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the

8    non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

9    202 (1986).

10       In order to prevail, a party moving for summary judgment must show the absence of a

11   genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or

12   to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Celotex Corp.*

13   *v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Nissan Fire &*

14   *Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099 (9th Cir. 2000).  Once the movant has made this

15   showing, the burden shifts to the party opposing summary judgment to "designate specific facts

16   showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 323.  To establish a "genuine" issue

17   of fact when opposing summary judgment, a plaintiff must "produce at least some significant

18   probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins*

19   *& Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

20       **B.    Standing**

21       As a threshold matter, Defendant argues that because Plaintiff Randy Jensen is not a property

22   owner, he lacks standing to bring suit against Defendant for violations of constitutional rights related

23   to an abatement proceedings against a property owner.  The Court may properly dismiss  a claim

24   under Rule 12(b) where the plaintiffs lack standing. *Sacks v. Office of Foreign Assets Control,* 466

25   F.3d 764, 771 (9th Cir. 2006 ) *cert. denied,* 549 U.S. 1348 (2007) ; *Ellis v. City of La Mesa*, 990

26   F.2d 1518, 1523 (9th Cir. 1993) ("[E]ach plaintiff must show that he personally has suffered some

27   actual or threatened injury as a result of the putatively illegal conduct of the defendant.").

28

United States District Court

For the Northern District of California

Defendant has cited no authority for its contention that Mr. Jensen, as a tenant, lacks standing to pursue his constitutional claims in this case.  The Court is not convinced that Mr. Jensen's status as a tenant, rather than a property owner, is determinative of the standing issue.  As the Supreme Court has explained in a different context:

> The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing.  When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.

*Warth v. Seldin*, 422 U.S. 490, 504-505 (1975).  Indeed "[t]itle ownership is not the only form of interest that can support standing. . . . [p]ecuniary injury is a sufficient basis for standing." *Equity Lifestyle Properties Inc., v. County of San Luis Obispo*, 548 F.3d 1184, 1189 (9th Cir. 2008) (quoting *Fair v. EPA*, 795 F.2d 851, 853 (9th Cir.1986)); *see also Warth*, 422 U.S. at 507  (stating that standing would exist where "unless relief from assertedly illegal actions [i]s forthcoming, [the plaintiff's] immediate and personal interests would be harmed").

The Court finds that Mr. Jensen, as a long-time resident of the property and owner of many of the vehicles that are the subject of the abatement order, may have standing to pursue the claims in this case with one exception:  the Fourth Amendment claim.  There is no allegation of an unlawful search or seizure in this case.  Any claim of a warrantless search or seizure in the future is conjecture at this point.  To demonstrate standing based on a "threatened injury," a plaintiff "must show that the threat of future injury is both 'real and immediate'." *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 507 (9th Cir. 1992) (*en banc*) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)).  "Conjectural" or "hypothetical' injury is not sufficient to meet this requirement. *Id.*  Nor is past illegal conduct sufficient if it is unaccompanied by any present adverse effects. *Id.*  In any event, as described below, none of the federal constitutional claims has merit.  Accordingly, the Court assumes that Plaintiff Randy Jensen has standing to bring his constitutional claims in this case, with the exception of the Fourth Amendment claim, and will proceed to the merits of the claims.

**United States District Court**
For the Northern District of California

1    **C.    Claim Preclusion**

2        In support of its motion for summary judgment, Defendant argues that Counts one and two of

3    the complaint alleging violations of 42 U.S.C. §1983 and a violation of the California Constitution

4    are barred by Plaintiffs' failure to pursue a writ of mandate under California Code of Civil Procedure

5    §1094.5 and/or §1094.6.  Under *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994),

6    Defendant asserts that because the same claims were before the Sonoma County administrative

7    officer, that ruling should be given preclusive effect in this federal case.  Plaintiffs argue that:  claim

8    preclusion under *Miller, supra,* (1) is inapplicable due to the existence of a CCP §1094.5 claim in

9    count three of the federal Complaint and (2)  inappropriate here due to the infirmities of the

10   administrative proceedings.

11       The Court finds *Miller* inapposite and concludes that Plaintiff's claims are not precluded

12   here.  In *Miller*, the Ninth Circuit affirmed a grant of summary judgment for the defendant in a

13   §1983 action on the ground that the administrative decision sustaining the plaintiff's dismissal from

14   his employment precluded the subsequent federal court action.  After Miller was dismissed from his

15   employment, he contested his dismissal before the Santa Cruz County Civil Service Commission.

16   The Commission held a full evidentiary hearing at which Miller was represented by counsel, was

17   permitted to present evidence, and call witnesses. *Miller*, 39 F.3d at 1032.  The Commission

18   affirmed his dismissal. *Id.*  Miller was permitted to seek judicial review of that adverse decision

19   under California Code of Civil Procedure §1094.5. *Id.*  Miller opted to file a federal §1983 action

20   instead. *Id.*  The court held that the unreviewed administrative decision precluded plaintiff's federal

21   claim.  The court found that three distinct "fairness requirements" must be established before a prior

22   administrative decision can act as a bar to a federal §1983 action: (1) the administrative agency must

23   act in a judicial capacity; (2) the agency must resolve disputed issues of fact properly before it; and

24   (3) the parties must have had an adequate opportunity to litigate. *Id.* at 1033 *citing United States v.*

25   *Utah Construction & Mining,* 384 U.S. 394, 422 (1966).

26       In the present case, there is no dispute that Plaintiffs did not first seek to overturn the

27   Sonoma county administrative ruling through a writ of mandate under Cal. Code of Civil Procedure

28   §1094.5 in the California courts.  However, unlike *Miller*, Plaintiffs here have included a CCP

§1094.5 claim as part of their complaint here in federal court, and they have done so in a timely manner.  Defendant argues that Plaintiffs are now barred from litigating these same claims in federal court under the doctrine of claim preclusion set forth in *Miller* due to the fact that Plaintiffs failed to first file their CCP §1094.5 claim in state court.  Defendant has cited no case, however, which stands for the proposition that a CCP §1094.5 claim can only be filed in state court and can not be brought in federal court.[3]

To the contrary, the Court has found several examples of district court cases – including cases from this district – in which the same complaint contained both federal civil rights claims under § 1983 and a state law claim under CCP §1094.5.  In *Wesner v. County of Napa*, 2009 WL 650274 (N.D. Cal. March 11, 2009), Judge Jeffrey S. White of this Court denied the County defendant's motion to dismiss in a §1983 case, finding that it may exercise supplemental jurisdiction over plaintiff's state law claims arising out of an abatement hearing, including a claim under CCP §1094.5.  *Id.* at *2.  The court concluded that both the federal and state writ claims arise out of the same case or controversy, making it proper to exercise supplemental jurisdiction over the state writ count.  *Id;. see also Selvitella v. City of So. San Francisco*, WL 5206425 (N.D. Cal, Dec. 24, 2009) (Wilkin, J.) (district court denied CCP §1094.5 writ on the merits and entered final judgment under Rule 54(b) to allow plaintiffs to appeal adverse decision stayed §1983 claims during pendency of writ appeal).  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 169 (1997).

The Court rejects Defendant's claim preclusion argument under *Miller*, and addresses each of Plaintiff's claims on the merits below.

---

[3]Defendant cites two cases, *Brazina v. Paul Revere Life Ins. Co.*, 271 F.Supp.2d 1163, 1166 (N.D. Cal. 2003) and *Covington & C. Bridge Co. v. Hager*, 203 U.S. 109 (1906), for the proposition that "[j]urisdiction of administrative writs of mandate pursuant C.C.P. §1094.5 and 1094.6 lie with the superior courts of the State of California, not with federal district courts, unless some other valid basis for federal jurisdiction exists."  Motion at 13.  The Court has read these opinions carefully and can find no such statement of the law in *Brazina*.  *Covington* stands for the proposition that federal courts lack jurisdiction over mandamus actions unless some other basis for federal jurisdiction exists.  Defendant also cites to the California Constitution, Article VI, Section 10 for the proposition that "jurisdiction over administrative mandamus actions lies with California state courts."  This provision says nothing about whether jurisdiction in the California courts is exclusive.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.      Equal Protection Claim (Count 1)**

**1.      Legal Standard**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985).  A plaintiff may establish an equal protection claim in two ways.  First, plaintiff can demonstrate that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory, a plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *See San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) *overruled on other grounds Action Apt. Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  *Village of Willowbrook*, 528 U.S. at 564.  If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive."  *Squaw Valley*, 375 F.3d at 944 (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187-88 (9th Cir. 1995).  Disparate government treatment is permissible "as long as it bears a rational relation to a legitimate state interest." *Id.*  Selective enforcement of valid laws, without more, does not establish that the state acted irrationally.  However, "there is no rational basis for state action that is malicious, irrational or plainly arbitrary."  *Id.* (quotations omitted).

**United States District Court**
For the Northern District of California

1

2.      **Application of the Legal Standard to the Facts**

2      In the present case, Plaintiffs do not allege membership in any protected class, such as race.

3  Plaintiffs argue essentially that they are a "class of one" in that they have been targeted for

4  enforcement of the Sonoma County zoning ordinance and have been treated distinct from other

5  similarly situated members of the community in violation of their equal protection rights.  The Equal

6  Protection clause protects not only groups, but individuals who would constitute a "class of one," if

7  the plaintiff can demonstrate that he "has been intentionally treated differently from others similarly

8  situated and that there is no rational basis for the difference in treatment."  *Squaw Valley*, 375 F.3d

9  at 944.

10      Plaintiffs present no evidence that the County of Sonoma's actions in this case or its zoning

11  ordinance has resulted in their being treated differently from other similarly-situated individuals.

12  Plaintiffs have not, for example, produced evidence that the Defendant received complaints about

13  other similar properties and took different action against those property owners.  Plaintiffs argue that

14  there are adjacent parcels of land with "numerous storage of outdoor equipment, inoperative

15  vehicles, miscellaneous items of metal, etc.." Opp. at 10 (citing Declaration of Randy Jensen at ¶

16  10).  There is no evidence in the record before the Court, however, that complaints have been made

17  to the County about these "adjacent parcels" and that despite complaints, only Plaintiffs have been

18  singled out for differential treatment.  Indeed there is no evidence submitted by Plaintiffs at all

19  regarding whether the County of Sonoma is or is not seeking to enforce the ordinance with respect to

20  the neighboring land owners.  The existence of neighbors with nonoperative vehicles on their land,

21  without more, is not sufficient to demonstrate unlawful "spot-zoning."

22      Plaintiffs also argue that the "enforcement mechanisms" of the ordinance are unconstitutional

23  in that the County "only enforces its so-called 'ordinance' when a complaint is made."  Opp. at 10.

24  Plaintiffs cite no authority for the proposition that enforcement in response to complaints, without

25  more, violates the Equal Protection Clause.  In any event, Plaintiffs provide no evidence on whether

26  other parcels have been subject to enforcement.

27      Moreover, there is no evidence of discriminatory intent on the part of Defendant.  Plaintiffs

28  argue that the hearing officer was biased against them; however, the transcript of the hearing reveals

United States District Court

For the Northern District of California

1    no evidence to support this bare allegation.  There is no evidence in the record before the Court that

2    the Defendant harbored discriminatory intent against Plaintiffs in this case.

3           Finally, there is no evidence that the Defendant's actions in this case were irrational or

4    lacked a rational relation to a legitimate state interest.  Defendant has articulated a rational state

5    interest – the prevention of environmentally dangerous vehicles or non-operative vehicles being

6    stored on agricultural land in Sonoma County.  Plaintiffs have not presented any evidence that this

7    stated interest is irrational.  There is no evidence to support an Equal Protection claim.  Summary

8    judgment is therefore GRANTED on this claim.

9           **E.      Fifth Amendment Claim (Count 1)**

10                 **1.      Legal Standard**

11          The Fifth Amendment prohibits the taking of private property for public use without just

12   compensation.  U.S. Const. Amend. V; *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835,

13   851 (9th Cir. 2001).  In order to prevail on a Fifth Amendment claim, Plaintiffs must establish that

14   the interest at issue was their private property and that it was taken without just compensation.

15   The Fifth Amendment "is designed not to limit the governmental interference with property rights

16   *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to

17   a taking."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (internal citations omitted)

18   (emphasis in original).

19          In *Lingle*, the Court reviewed the various takings theories recognized in its precedent.  *See*

20   *id.*  The first manner of taking is the actual, physical invasion or appropriation of private property by

21   the government.  *Id.* at 537.  Next, the Court addressed "regulatory takings," in which the

22   "government regulation of private property ... [is] so onerous that its effect is tantamount to a direct

23   appropriation or ouster." *Id.*  There are two types of regulatory takings that result in a *per se* taking

24   under the Fifth Amendment.  *Id.* at 538.  The first of these is where "government requires an owner

25   to suffer a permanent physical invasion of her property."  *Lingle*, 544 U.S. at 538 (citing *Loretto v.*

26   *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982) ("cable highway" that networked

27   buildings throughout city constituted "a permanent physical occupation authorized by government"

28   and was thus a taking that warranted just compensation)).

1    The second type of regulatory taking that results in a *per se* Fifth Amendment taking is a

2    government regulation that "completely deprive[s] an owner of '*all* economically beneficial us[e]' of

3    her property."  *Lingle*, 544 U.S. at 538 (emphasis in original) (citing *Lucas v. South Carolina*

4    *Coastal Council*, 505 U.S. 1003  (1992) (just compensation due where owner's property had been

5    rendered valueless)).

6    The third type of regulatory taking is a "land-use exaction[]."  *Lingle*, 544 U.S. at 546.  In

7    this type of takings case, the government demands an easement as a precondition to receipt of a

8    permit.  *See Nollan v. California Coastal Comm'n,* 483 U.S. 825 (1987); *Dolan v. City of Tigard*,

9    512 U.S. 374 (1994).

10   In *Lingle*, the Court explained that all other regulatory takings are governed by *Penn Central*

11   *Transportation Co. v. City of New York*, 438 U.S. 104 (1978).  *Lingle*, 544 U.S. at 538.  In *Penn*

12   *Central*, the Court recognized several factors in assessing whether or not a regulation effects a

13   "taking" requiring compensation.  These included "[t]he economic impact of the regulation on the

14   claimant and, particularly, the extent to which the regulation has interfered with distinct

15   investment-backed expectations[,]" as well as "the character of the governmental action."  *Penn*

16   *Central*, 438 U.S. at 124.  Regarding this last factor, the Court explained that a physical invasion of

17   property is more likely to result in a "taking" than "when interference arises from some public

18   program adjusting the benefits and burdens of economic life to promote the common good."  *Id*.

19                    **2.        Application of Legal Standard to the Facts**

20   Plaintiffs' Fifth Amendment claim is devoid of evidence that could constitute a taking under

21   any of the recognized takings theories.  There is no evidence in the record of government occupation

22   of Plaintiffs' land.  This is not a case involving land-exactions in exchange for the issuance of

23   permits.  Nor is there evidence before this Court that Plaintiffs have been denied all economically

24   viable uses of their land.  Plaintiffs are not entitled to "the most beneficial use of [their] property."

25   *See Penn Central*, 438 U.S. at 127.

26   There is also no evidence in the record before the Court that Plaintiffs have previously

27   sought just compensation for any alleged "taking."  *Macri v. King County*, 126 F.3d 1125, 1129 (9th

28   Cir. 1997) ("The Fifth Amendment is not offended by the government taking property, but only by

United States District Court

For the Northern District of California

1  the government taking property without just compensation.") *abrogated on other grounds by Crown*

2  *Pt. Dev. Inc. v. City of Sun Valley,* 506 F.3d 851 (9th Cir. 2007).[4]

3       Finally, Plaintiffs raise no argument in opposition to Defendant's summary judgment motion

4  on the takings claim.  The motion for summary judgment on this claim is therefore unopposed and

5  the summary judgment motion on this claim is GRANTED.[5]

6       **F.       Fourth Amendment Claim (Count 1)**

7            **1.      Legal Standard**

8       The Fourth Amendment provides: "The right of the people to be secure in their persons,

9  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

10  Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

11  describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

12  "It is clear that the warrant requirement of the fourth amendment applies to entries onto private land

13  to search for and abate suspected nuisances."  *Conner v. City of Santa Ana*, 897 F .2d 1487, 1490

14  (9th Cir.1990) (footnote omitted), *cert. denied*, 498 U.S. 816 (1990), (citing *Michigan v. Tyler*, 436

15  U.S. 499, 504-07 (1978)); *Schneider v. County of San Diego*, 28 F.3d 89, 91 (9th Cir. 1994).  Entry

16  to abate a known nuisance also falls within the warrant requirement of the Fourth Amendment.

17  *Conner*, 897 F.2d at 1490.  Further, the impoundment of an automobile is a seizure within the

18

---

19       [4]Indeed, for this reason it is questionable whether the Fifth Amendment claim is properly before
20  this Court.  There is no evidence that Plaintiffs have sought "just compensation" for any alleged
    "taking" in this case.  "A plaintiff cannot bring a section 1983 action in federal court until the state
21  denies just compensation."  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993).  In
    *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172
22  (1985), the Supreme Court articulated a two-step analysis to determine whether an "as-applied"
    regulatory takings claim is ripe:  (1) the underlying "administrative action must be final before it is
23  judicially reviewable" and (2) the claimant must have "unsuccessfully attempted to obtain just
    compensation through the procedures provided by the State."  *Id.* at 192, 195.  Although Plaintiffs could
24  seek to avoid this rule by arguing the narrow exception to the second prong of *Williamson* that the state
    procedures are "unavailable or inadequate" (*Williamson*, 473 U.S. at 197), this exception applies only
25  if a party has already "utilized" state procedures and has demonstrated that the pursuit of such remedies
    would be futile.  As explained by the Supreme Court, "the property owner cannot claim a violation of
26  the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Id.*
    at 195.  There is no evidence in this case that Plaintiffs sought just compensation for any alleged taking.

27       [5]This claim might fail for an additional reason – the alleged "taking" involves abatement of a
    public nuisance.  *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 n. 22 (1987)
28  ("Courts have consistently held that a State need not provide compensation when it diminishes or
    destroys the value of property by stopping illegal activity or abating a public nuisance.").

1    meaning of the Fourth Amendment.  *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir.

2    2005).

3    ### 2.    Application of the Legal Standard to the Facts

4    In the present case, Plaintiffs' Amended Complaint contains the following allegations with

5    respect to the Fourth Amendment:  "After the hearing, an 'Decision and Administrative Order' was

6    issued on April 18, 2008 declaring the existence of violations on plaintiffs' property and ordered the

7    abatement thereof by plaintiffs. . . and further directing a lien be placed on plaintiffs' property for

8    abatement penalties costs incurred by the County, the latter of which constitutes a significant

9    interference with and seizure of plaintiffs' property without a warrant."  FAC ¶ 12.  Plaintiffs further

10   allege:  "The administrative order and the activities of the County present a clear and immediate

11   threat of illegal seizure of plaintiffs' personal property in violation of the Fourth Amendment of the

12   United States Constitution and unless enjoined, the County will proceed to unlawfully and

13   unconstitutionally seize and destroy plaintiffs' personal property in violation of the Fourth

14   Amendment."  FAC ¶ 14.  None of the facts alleged by Plaintiffs in their Amended Complaint

15   constitutes a violation of the Fourth Amendment.  Plaintiffs do not contend that the inspectors in this

16   case, for example, entered their property without a warrant.  Nor do they allege facts that would

17   establish that any of Plaintiffs' vehicles were seized without a warrant.  The allegation that the

18   Plaintiffs' vehicles will be taken at some point in the future is conjecture.

19   Perhaps most importantly, this is summary judgment –  more than mere allegations of

20   wrongdoing are required in order to prevail.  There is no evidence in the record before the Court to

21   support Plaintiffs' Fourth Amendment allegations.  The Court therefore GRANTS summary

22   judgment as to the Plaintiffs' Fourth Amendment Claim.

23   ### G.    First Amendment Claim (Count 1)

24   ### 1.    Legal Standard

25   Plaintiffs' first claim against Defendant under 42 U.S.C. § 1983 is for violating their First

26   Amendment rights.  The First Amendment states: "Congress shall make no law respecting ... the

27   right of the people ... to petition the Government for a redress of grievances." The right to petition

28   "is implicit in '[t]he very idea of government, republican in form.' "  *McDonald v. Smith*, 472 U.S.

**United States District Court**
For the Northern District of California

479, 482 (1985) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1876)).  To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'"  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citing *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999).  However, "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives."  *Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) (citation omitted).

### 2.    Application of the Law to the Facts

Plaintiffs raise two First Amendment challenges in their Amended Complaint.  First, Plaintiffs allege that they were deprived of a meaningful opportunity to be heard at the administrative hearing and were thus deprived of their First Amendment rights to petition to redress their grievances "due to the biased, obstructive and scornful manner in which the County conducted the meeting."  FAC at ¶ 11.  Second, Plaintiffs argue that the civil penalties that were imposed as a result of the violations and abatement order were "assessed in part due to plaintiffs' exercising their First Amendment rights (and are thus illegal) and are grossly excessive."  ¶12.  The argument that the fines are grossly excessive will be addressed below in the Court's discussion of the Eighth Amendment.

The Court agrees with Defendant and finds no First Amendment violation as a matter of law. With respect to the argument that the Plaintiffs were denied the ability to petition the government based upon the hearing officer's conduct in this case, the Court finds that the transcript of the hearing reveals this argument to be wholly without merit.  Plaintiffs had ample opportunity to present their arguments and evidence.  Indeed, the transcript in this case undermines Plaintiffs' allegations that the hearing officer conducted the hearing in an "obstructive" or "scornful" manner. To the contrary, the hearing officer allowed Plaintiffs' counsel significant latitude at the hearing.

United States District Court

For the Northern District of California

In any event, the First Amendment does not require the hearing officer to agree with Plaintiffs' position, nor was the officer required to allow Plaintiffs' counsel unlimited time at the hearing. *See Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 464-65 (1979) ("The First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.' ... The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so.... But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it."). The fact that Plaintiffs object to the conduct of the administrative officer is not evidence that they were deprived of the opportunity to petition the government.

Second, the argument that the fines were imposed as a result of Plaintiffs' decision to exercise their First Amendment rights fails. There is no evidence to support Plaintiffs' allegation that the civil penalties and interest were imposed on Plaintiffs in retaliation for exercising their First Amendment rights. FAC at ¶ 12. Plaintiffs argue (without citing to any evidence in support) that under the penalty sheet, if a person asserts his right to have a hearing challenging the abatement, then he will be deemed to have "delayed response" and is subject to a higher penalty. There is no evidence before the Court, however, that the County's determination that Plaintiffs delayed their response to the notice of violations was based upon Plaintiffs' hearing request.[6] Rather, the evidence

---

[6]Even if the Plaintiffs are correct that they are subject to higher penalties under the ordinance because they did not comply with the ordinance in question earlier, Plaintiffs cite no authority (and the Court has found none) which  holds that the alleged increase in penalty constitutes a violation of the First Amendment. The fact claimed here – that Plaintiffs would have incurred a lesser penalty if they had not delayed in complying with the ordinance – is not an unconstitutional burden on Plaintiffs' right to petition the government. Indeed, in other contexts, the fact that a person can obtain a lesser punishment by giving up a constitutional right to challenge whether *any* punishment was due has been held not to be an unconstitutional burden. In an analogous context, the Supreme Court has made it clear that not every burden on the exercise of the right to a jury trial is impermissible. *Cf Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978) (". . . there is no *per se* rule against encouraging guilty pleas. . . a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant 'the possibility or certainty . . .[not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty . . ., but also of a lesser penalty than that *required* to be imposed after a guilty verdict by a jury.'" (citations and footnotes omitted) (emphasis in original). Relying on *Corbitt*, the Ninth Circuit explained: "[A]s long as there is no indication the defendant has been retaliated against for exercising a constitutional right, the government may encourage plea bargains by affording leniency to those who enter pleas." *United States v. Narramore*, 36 F.3d 845, 847 (9th Cir. 1994) *citing Corbitt*, 439 U.S. at 223; *see also United States v.*

United States District Court

For the Northern District of California

before the Court indicates that Plaintiffs were penalized for their decision not to abate the nuisance, *i.e.*, to leave the cars on the property long after the notice of violation was issued providing thirty days within which to abate the nuisance.  In sum, the Court finds no evidence in the record before it that supports a violation of Plaintiffs' First Amendment rights.  Summary judgment on this claim is therefore GRANTED.

### H.      Excessive Fines – Eighth Amendment Claim (Count 1)

#### 1.      Legal Standard

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.Amend. VIII.  Plaintiffs allege that the civil penalties and lien set forth in the administrative order violate the Eighth Amendment's prohibition of excessive fines.  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality:  The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakjian*, 524 U.S. 321, 334 (1998) (citation omitted).

#### 2.      Application of the Law to the Facts

Assuming the Eighth Amendment applies to civil penalties imposed as a result of regulatory violations, there is no evidence before the Court that the fines imposed here are disproportionate to the gravity of the offense or disproportionately high as compared to what others have received for similar violations.  Plaintiffs have provided no evidence to support this claim.  In opposition to the Summary Judgment Motion, Plaintiffs merely make the conclusory statement that ". . . the fines imposed are excessive and unconstitutional because they penalize plaintiffs for exercising their First Amendment rights to question the ordinance and its applicability to plaintiffs' property.  Thus, the fines imposed here are as a matter of law illegal and excessive."  Opp. at 17.  The Plaintiffs cite to no authority in support of this legal conclusion, nor do they point to evidence in the record in support of their argument.

---

*Villasenor-Cesar*, 114 F.3d 970, 975 (9th Cir. 1997).  Plaintiffs cite no evidence that the alleged increased penalty has been imposed in retaliation for their decision to challenge the abatement order.

United States District Court

For the Northern District of California

The penalty sheet, which sets forth the fine calculations, provides for differing levels of monetary fines depending upon an analysis of the severity of the violation.  Plaintiffs were not found to have violated the ordinance at the most serious level.  There is no evidence to support the claim that the fine is excessive in the constitutional sense in that it bears no relationship to the offense. The fines appear tailored to the gravity of the offense.  Defendant's motion for summary judgment on this claim is GRANTED.

### I.      Procedural Due Process Claims

#### 1.       Legal Standard

In order to state a cause of action for violation of procedural due process, Plaintiffs must plead two elements.  First, Plaintiffs must establish that a liberty or property interest exists that would entitle them to due process protections.  Second, having established a constitutionally protected interest, Plaintiffs must allege that they were denied due process in violation of the Fourteenth Amendment.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.")  If a liberty or property interest is at stake, the court then applies a three part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (citations omitted).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Id.* at 333 (internal quotations and citation omitted).  In the context of an administrative hearing, the Supreme Court in *Mathews*, explained that:

> The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances.  The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.  All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case.

*Id.* at 348-49 (citations and internal quotation marks omitted).

**United States District Court**
For the Northern District of California

2. **Application of the Law to the Facts**

   a. **Plaintiff's Procedural Due Process Challenge to the Hearing Procedures Fail as a Matter of Law**

The issue here – the right to the use and enjoyment of one's property – is a well-established constitutional property right. Plaintiffs here allege that the County of Sonoma deprived them of the lawful use and enjoyment of their property without due process of law. In support of this theory, Plaintiffs argue that the hearing officer deprived them of notice and a meaningful opportunity to be heard. Defendant responds that the administrative hearing satisfied the procedural requirements for administrative hearings set forth by the Supreme Court in *Utah Mining* and that the zoning ordinance's notice provisions satisfy due process requirements. The Court agrees.

Plaintiffs make the following arguments with respect to the constitutionality of the hearing in this case. Plaintiffs argue that the hearing officer violated Due Process in the following important ways: (1) the hearing officer improperly shifted the burden onto Plaintiffs to disprove the allegations against them; (2) the hearing officer "arbitrarily and repeatedly interrupted plaintiffs' presentation of their case" and "prejudged facts"; (3) the officer "repeatedly interrupted plaintiffs' cross-examination of witnesses" and "disrupted the flow of testimony"; (4) the officer "truncated and abbreviated" the time allotted for plaintiffs' case without prior notice; (5) the officer allowed a non-testifying person to interject; (6) the officer interrupted the direct examination of Plaintiff Randy Jensen; (7) the hearing officer allowed Defendant to present additional evidence without allowing further cross-examination; (8) the officer refused to allow Plaintiffs to file a post-hearing brief.[7] Opp. at 13-14. These arguments are without merit.

The first point that must be made here is what is *not* at stake. This is not a case where there was no pre-deprivation evidentiary hearing. Here, there was a hearing, and the allegation is that the conduct of the hearing officer was *so egregious* as to completely deprive Plaintiffs of a pre-

---

[7]In addition, in the First Amended Complaint, Plaintiffs allege that the hearing officer was biased against them due to the presence of a "financial stake in the outcome, under the County's policies." FAC ¶ 10. Defendant moves for summary judgment on this claim, arguing that the hearing officer does not have a financial stake in the outcome of any administrative hearing. Plaintiffs provide no evidence or argument in opposition to the Defendant's Motion on this claim, and the Court finds that the Defendant's motion is unopposed.

1    deprivation forum to challenge the County's actions.  The Court assumes for purposes of this motion

2    that Plaintiffs have a right to a pre-deprivation evidentiary hearing.

3           Plaintiffs provide no authority for the proposition that the challenges listed above to the

4    conduct of the hearing officer deprived them of their pre-deprivation remedy.  Moreover, having

5    reviewed the hearing transcript, the evidence reflects that the hearing officer allowed Plaintiffs to

6    present evidence, call witnesses, conduct cross-examination and challenge the Defendant's evidence

7    and the case against Plaintiffs.  Plaintiffs have cited to no authority suggesting that, in this context,

8    the Constitution requires anything more.

9           Moreover, with respect to each of Plaintiffs' challenges, Plaintiffs fail to provide evidence to

10   back up their challenges, or authority that the particular conduct violates due process.  With respect

11   to Plaintiffs' first argument – that the hearing officer improperly shifted the burden of proof –  the

12   Court notes that Plaintiffs provide no evidentiary support for this argument.  Plaintiffs merely state

13   in a conclusory fashion that "it should be noted in contravention to long-established common law

14   and due process, the burden was on plaintiffs to prove their innocence of the alleged violations."

15   Opp. at 13.  The Court has reviewed the hearing transcript in this case, and finds no evidence to

16   support Plaintiffs' argument.  To the contrary, the Defendant submitted its report alleging the

17   ordinance violations, and the hearing officer allowed Plaintiffs ample opportunity to present

18   evidence and argument regarding the allegations in the report.  To defeat a motion for summary

19   judgment, a plaintiff must do more then present arguments.  To establish a genuine issue of fact

20   when opposing summary judgment, a plaintiff must "produce at least some significant probative

21   evidence tending to support" the allegations in the complaint.  *Smolen*, 921 F.2d at 963 (internal

22   quotations and citation omitted).

23          The remaining due process claims arising out of the hearing officer's conduct at the hearing

24   are similarly unavailing.  First, none of these alleged violations is so egregious as to violate the Due

25   Process Clause.  Indeed, Plaintiffs had input as to who would hear their case:  Plaintiffs were

26   provided a list of hearing officers and permitted to object to having any of the listed officers preside

27   over the hearing.  RJN, Ex. B [Ex. G, December 21, 2007 letter to Rosemary Jensen].  Plaintiffs did

28   not do so.  Second, the remaining challenges are not supported by admissible evidence.  The

United States District Court

For the Northern District of California

challenges to the evidentiary rulings of the hearing officer, placing limitations on excessive or irrelevant testimony or argument, interjecting questions, allowing further evidence or briefing, and other similar rulings, are within the discretion of the hearing officer. Latham Decl., Ex. A ("Sonoma County Quasi Judicial Appeal Procedures for Zoning Abatement Appeals Pursuant to Chapter 26 of the Sonoma County Code") (hearing officer has discretion to make rulings, limit excessive or repetitive testimony, to interject questions of witnesses and to allow cross examination "if he or she deems it in the interest of justice to do so"). Due process does not require that the hearing officer make evidentiary and procedural rulings to Plaintiffs' liking, so long as they have a meaningful opportunity to present their case – which they did. Plaintiffs' arguments amount to a claim that the hearing was not conducted exactly as he would have conducted it. Nothing in the record indicates that they were prevented from presenting their case, denied the opportunity to present evidence, put on witnesses, or to cross-examine witnesses for the Defendant. Indeed, if anything, the hearing transcript demonstrates that the hearing officer allowed extensive questioning and argument on irrelevant matters at the insistence of Plaintiffs' counsel. The transcript of the hearing reveals that the officer displayed patience and neutrality in the face of hostility and constant disruption from Plaintiffs' counsel. *See e.g.*, RJN, Ex. A at 10-13, 23, 25, 45) (interrupting the hearing officer, telling the hearing officer "you're doing a bad job of it [running the hearing], with all due respect."). Moreover, the record reflects that counsel for Plaintiffs spent a considerable amount of time arguing with witnesses, counsel and the hearing officer regarding matters already deemed irrelevant by the officer such as lengthy argument regarding the anonymous complaint filed against Plaintiffs that began the administrative process. *See e.g.*, RJN, Ex. A at 83 (hearing officer urging counsel to wrap up lengthy questioning of Mr. Neuman regarding hobbies, gardening, hunting, fishing, golfing and other potential uses of the property under the zoning ordinance). The hearing officer acted well within her discretion to limit the hearing as a result of Plaintiffs' counsel's decision to utilize his time in such a manner rather than address the merits of the case against his clients. *See e.g.*, RJN, Ex. A at 48-49 (hearing officer urging counsel to move on and spend time addressing the merits of the County's case against his clients); *id* at 64 ("I'm asking you to try to maintain your questioning within relevant lines.")

United States District Court

For the Northern District of California

1    Nor is the Court persuaded by Plaintiffs' argument that the hearing officer violated due

2   process when she decided to end the hearing after the lunch break, limiting Plaintiffs' time to twenty

3   more minutes of evidence and testimony.[8]  The Due Process Clause does not dictate the length of the

4   hearing, and Plaintiffs were given advance notice that the hearing could be as short as ten minutes.

5   It is undisputed that the hearing began at 9:30 a.m.  *See* Schmid Decl., ¶ 4.  It was well within the

6   hearing officers' discretion to end the hearing after a lunch break, particularly here, where the

7   procedures mailed to the Plaintiffs with the Notice of Abatement informed the parties that they

8   would have at least ten minutes in which to present their case.  RJN, Ex. A ("The Hearing officer

9   may establish a time limit for presentations; provided, however, that at least ten minutes shall be

10   allowed for each speaker.")  There is no evidence that the "shortening" of the hearing prejudiced

11   Plaintiffs.  Indeed, Mr. Jensen admits in his declaration that he was permitted to explain the various

12   items in the pictures that Plaintiffs' counsel introduced as evidence, that he was permitted to go

13   through the exhibits, and that he presented the magazines that he wanted to present at the hearing.

14   Declaration of Randy Jensen ("Jensen Decl.") at ¶14.  Mr. Jensen states that he "would have liked"

15   to have gone into greater detail explaining the magazines and would have liked to have "elaborated

16   in greater detail" on their connection to the remaining exhibits submitted on his behalf.  *Id.*  The

17   Court finds this testimony insufficient to demonstrate a due process violation.

18    The Court is similarly unpersuaded by Plaintiffs' argument that the hearing officer

19   improperly allowed Defendant to introduce additional evidence without allowing further cross-

20   examination – the aerial photograph of the property from 1980 and the original ordinance enacted in

21   1928 and adopted in 1975.  The Due Process Clause is not implicated by this decision.  In any event,

22   both pieces of evidence were introduced by the Defendant in order to rebut the Plaintiffs' contention

23   that their use of the property was a "grandfathered use."  Reply at 8.  The hearing transcript shows

24   that Plaintiffs did not ask for a continuance of the hearing or for additional time to address this

25   rebuttal evidence, or present additional evidence to contradict this evidence.  The hearing officer

---

26

27    [8]In fact, it appears that Plaintiffs were given more than twenty minutes after the lunch break.
Although the hearing officer indicated that the Plaintiffs would have twenty additional minutes to
conclude their presentation, the transcript reveals that the afternoon portion of the hearing was nearly

28   fifty minutes in length.  *See* Hearing Transcript at 89, 132 (indicating that the hearing resumed at 1:30
p.m. and ended at 2:20 p.m.)

United States District Court

For the Northern District of California

1   was permitted to allow further cross examination at her discretion.  Latham Decl., Ex. A.  Any

2   claimed deficiency was waived by Plaintiffs' failure to address it at the hearing.

3          The hearing officer had the discretion to ensure that the hearing was conducted in an orderly

4   manner and certainly had the discretion to exclude "unduly repetitious or irrelevant evidence."  RJN,

5   Ex. A at 89.  There is nothing in the record before this Court that amounts to a violation of

6   procedural Due Process.  The Defendant's motion for summary judgment with respect to all

7   procedural due process claims arising out of the conduct of the hearing officer is therefore

8   GRANTED.

9                  **b.       Plaintiff's Procedural Due Process Claims Challenging the Notice
                           Requirements under the Ordinance**

10

11         In addition to challenging the procedures used at the hearing in this case, Plaintiffs also argue

12  that the notice provisions of the Sonoma county zoning ordinance at issue fail to provide adequate

13  notice of the prohibited conduct and failed to give adequate notice to Plaintiffs of the hearing.

14         First with respect to notice of the hearing, the Court finds that the evidence in this case

15  demonstrates that under the ordinance, Defendant was required to, and did in fact, mail notice of the

16  violations to the property owner of record, Rosemary Jensen.  The ordinance also required

17  Defendant to post notice on the property, which Defendant did – in three locations on the property.

18  JSUF NO. 12; RJN, Ex. B.  Indeed, Plaintiffs proceeded to defend against the violations alleged.

19  Under the due process standards articulated above, this notice is sufficient.  Plaintiffs' due process

20  claim challenging the zoning ordinance's notice procedures fails as a matter of law and summary

21  judgment is GRANTED on this claim.

22         With respect to the argument that the ordinance itself does not place members of the general

23  public on notice of what conduct is proscribed by law, the Court construes Plaintiff's argument as a

24  vagueness challenge to the ordinance.  The Ninth Circuit has held that "a party challenging the facial

25  validity of an ordinance on vagueness grounds outside the domain of the First Amendment must

26  demonstrate that 'the enactment is impermissibly vague in all of its applications.'"  *Hotel & Motel*

27  *Ass'n. v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (quoting *Village of Hoffman Estates v.*

28  *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).  Plaintiffs make no such showing here.

**United States District Court**
For the Northern District of California

1  The Court concludes that the pertinent Sonoma County ordinances relating to the permitted uses on

2  diverse agricultural land are not vague on their face or in their application.  Section 26-92-200 of the

3  Sonoma County Code provides, "except as otherwise provided in this chapter, no building shall be

4  erected and no existing building shall be moved, altered, added to or enlarged, *nor shall any land,*

5  *building or premises be used, designated or intended to be used for any purpose or in any manner*

6  *other than one that is included among the uses listed in this chapter* as permitted in the district in

7  which such building, land or premises is located."  Sonoma County Code § 26-92-200 (emphasis

8  added).  Section 26-08-010 provides a clear list of the permitted uses on diverse agricultural land,

9  and § 26-08-020 sets forth the uses that are permitted with a use permit.  Finally, section 26-08-030

10  provides residential density and development criteria for the use of land and structures.[9]  The Court

11  is not persuaded by Plaintiffs' argument that the County's enforcement of these ordinances

12  constitutes "the enforcement and creation of unwritten law."  Opp. at 8.

13      The Court concludes that the applicable ordinances provide sufficient notice to ordinary land

14  owners and occupiers of the land of what specific uses are permitted on land that is zoned "diverse

15  agricultural" and gives law enforcement ample guidance to enforce these code sections in a

16  non-arbitrary way.  *See Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (explaining

17  that "an ordinance must (1) define the offense with sufficient definiteness that ordinary people can

18  understand what conduct is prohibited; and (2) establish standards to permit police to enforce the

19  law in a non-arbitrary, non-discriminatory manner.") (citing *Kolender v. Lawson*, 461 U.S. 352, 357

20  (1983)).

21      To the extent Plaintiffs also raise a void for vagueness challenge to the Sonoma County

22  Ordinances at issue here, the Court GRANTS summary judgment as to that claim as a matter of law.

23

24

25

26

27      [9]Although not cited in the original "Notice of Violation," Defendant also cites to the pertinent
definitions in the Sonoma County Code of the terms "junkyard" "nonoperative motor vehicle,"

28  "nonoperative motor vehicle storage yard" and "truck or equipment terminal or depot."  Sonoma County
Code § 26-02-140.  These definitions were introduced at the hearing.  *See* RJN Ex. A, RT:18.

United States District Court

For the Northern District of California

**J.**      **Substantive Due Process Claim**

**1.**      **Legal Standard**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1. This Clause provides individuals with the right to both substantive and procedural due process.  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  Substantive due process "prevents the government from engaging in conduct that shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty." *Id.* (internal quotation marks and citations omitted).  The Supreme Court has been "reluctant to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).  Thus, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing" these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations and citation omitted).  These authorities would seem to suggest that Plaintiffs' substantive due process claim is more appropriately analyzed under the particular relevant constitutional amendments –  the First, Fourth, Fifth and Eighth Amendments.  However, a recent decision of the Ninth Circuit suggests otherwise:

> We see no difficulty in recognizing the alleged deprivation of rights in real property as a proper subject of substantive due process analysis. We have long held that a substantive due process claim 'must, as a threshold matter, show a government deprivation of life, liberty, or property. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998). In *Squaw Valley*, we specifically reaffirmed the principle that landowners have 'a constitutionally protected property interest' in their 'right to devote [their] land to any legitimate use.' 375 F.3d at 949 (internal quotation marks omitted) (citing *Harris v. County of Riverside*, 904 F.2d 497, 503 (9th Cir.1990)). An arbitrary deprivation of that right, thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action

 *Action Apartment Ass'n. v. Santa Monica Rent Control Board*, 509 F.3d 1020, 1026 (9th Cir. 2007).  Thus, under *Action Apartment Ass'n.*, the Court analyzes Plaintiffs' substantive due process claim on the merits.  In order to establish a violation of a substantive due process right, Plaintiffs must demonstrate:  "(1) the deprivation of a protectible property interest (2) by means that were arbitrary and capricious. *Columbia Park Golf Course, Inc. v. City of Kennewick*, 2008 WL 4830820, *3 (E.D.

United States District Court

For the Northern District of California

1  Wash. 2008) (citing *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).  "A

2  mere 'unilateral expectation' of a benefit or privilege is insufficient; the plaintiff must 'have a

3  legitimate claim of entitlement to it.'"  *Columbia Park*, 2008 WL 483080 at *3 (citing *Nunez v. City*

4  *of L.A.*, 147 F.3d 867, 872 (9th Cir. 1998).  The substantive property right may be created by state or

5  federal law, but only "federal constitutional law determines whether that interest rises to the level of

6  a 'legitimate claim of entitlement.'"  *Id.* (citations omitted).

7                    **2.       Application of the Law to the Facts**

8              Plaintiffs argue that they were deprived of "meaningful liberty/property interests"

9  under the Fourteenth Amendment.  Specifically, Plaintiffs contend that "plaintiffs have an honest

10  and good faith use of their property for the hobby of vintage car collection and an automobile racing

11  hobby, and to support the agricultural use of the property, and the maintenance of horses and other

12  animals on the 20-acre property."  Opp. at 6.  Without citation to relevant authority, Plaintiffs argue

13  that "[t]hese hobbies are protected by the United States and California Constitutions."  Opp. at 6.

14  Plaintiffs argue that there is "no legitimate state or governmental interest that is sufficient to

15  contravene the Jensens' fundamental rights."  *Id.* at 7.  Plaintiffs further argue that County's

16  "attempt to impose unwritten rules and regulation [sic] on the Jensen property cannot be squared

17  with the constitutional mandates of the Fourteenth Amendment."  *Id.* at 9.

18              In the present case, Plaintiffs point to no authority establishing a protectible property interest

19  in pursuing their non-operable car hobby on their land.  Plaintiffs also argue, without elaboration or

20  citation to any relevant case law, that their use of the land for their car hobby is a "grandfathered

21  use" and thus Defendant's rejection of that argument amounts to a violation of substantive due

22  process.  Even if the Court were to find a property interest in maintaining non-operable vehicles, tow

23  trucks and car parts on agricultural land, or were to conclude that such uses were "grandfathered"

24  uses, there is no evidence that this right was deprived by means that were arbitrary and capricious.

25  To the contrary, Plaintiffs were given ample opportunity to challenge the Defendant's findings,

26  including a full and fair hearing at which Plaintiffs were represented by counsel and provided the

27  opportunity to appeal.  The Court rejects these arguments.

28

27

United States District Court

For the Northern District of California

1    In addition, the Defendant has articulated a legitimate purpose for the applicability of the

2    zoning ordinance here – to remove environmental hazards from rural agricultural property.  This is

3    not a case where the regulation fails to serve a legitimate governmental purpose.  "[A] regulation

4    that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs

5    afoul of the Due Process Clause."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005) (citation

6    omitted).  The Court finds that the pertinent ordinance serves a legitimate governmental purpose.

7    Moreover, there is evidence in the record to support the administrative hearing officer's finding that

8    Plaintiffs' land uses were not grandfathered.  The Defendant introduced aerial photographs

9    indicating that the Plaintiffs' use did not pre-date enactment of the ordinance.  This constituted a

10   reasoned basis for denying grand-fathering, and is not irrational.  Because Defendant did not act

11   irrationally or arbitrarily, no substantive due process claim is stated.  Plaintiffs' substantive due

12   process claim fails as a matter of law.  Summary judgment on this claim is GRANTED.

13   **K.        State Law Claims – California Constitution (Count 2) and CCP § 1094.5 (Count
14           3)**

15   In light of the Court's ruling above granting summary judgment as to all federal claims, the

16   Court now GRANTS Defendant's renewed motion to dismiss the state law claims (counts 2 & 3).  A

17   district court may decline to exercise supplemental jurisdiction over a state law claim if the district

18   court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).

19   Supplemental jurisdiction is a doctrine of discretion, not a plaintiff's right, and does not need to be

20   exercised in every case.  *Rano v. Sipa Press,* 987 F.2d 580, 588 (9th Cir. 2003).  The Court declines

21   to exercise supplemental jurisdiction over Plaintiffs' state claims due to the fact that the federal

22   question claims under §1983 are dismissed on the merits.  The second and third claims are therefore

23   DISMISSED WITHOUT PREJUDICE.

24   //

25   //

26   //

27   //

28   //

**IV.     CONCLUSION**

For the reasons stated above, the Defendant's motion is GRANTED as to all claims set forth in Count 1 of the Amended Complaint.  Counts 2 and 3 of the Amended Complaint are DISMISSED WITHOUT PREJUDICE.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 4, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge